AC

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| MARY ANN WILLIAMS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 05 C 5281 |
| v. ) | |
| ) | Judge John W. Darrah |
| VIKING DODGE, INC., ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Mary Ann Williams, filed a six-count Complaint against the Defendant, Viking Dodge, Inc., alleging violation of the Equal Credit Opportunity Act, violation the Fair Credit Reporting Act, conversion, violation of the Illinois Consumer Fraud Act, common law fraud, and wrongful repossession. Shortly after filing the Complaint, the parties settled the matter upon Williams' acceptance of a $1,500 offer of judgment. As part of that settlement, Viking Dodge agreed to pay Williams' reasonable attorneys' fees and costs, which were to be determined by the Court. Presently before the Court is Williams' Petition for Attorney's Fees.

## BACKGROUND

Williams' attorneys seek the following compensation: Attorney Dmitry Feofanov requests the hourly rate of $325 for 5.5 hours of work, $105 for one hour of paralegal services, and $40 in internet research costs, totaling $1,965.00; Attorney William Hutul requests the hourly rate of $425 for 4.1 hours of work and $250 in filing costs, totaling $1,992.50. Combined, Williams' counsel request $3,957.50. Viking Dodge asserts that: (1) the internet research cost of $40 is unsubstantiated; (2) Feofanov's one-hour paralegal fee is excessive; (3) Feofanov's billed time is excessive; and (4) both Feofanov's and Hutul's hourly rates are unreasonable. Viking Dodge proposes a reasonable

hourly rate for Feofanov of $160 for 2.2 billable hours[1] and a reasonable hourly rate of $225 for Hutul's 4.1 billable hours and reasonable costs of $250 for filing.

## ANALYSIS

Two issues are before the Court: (1) whether Williams is a "prevailing party" as to recover under the statutory fee-shifting provisions; and (2) whether the number of hours and the hourly rates, as well as the costs and fees, alleged by Williams' attorneys are reasonable.

*Prevailing Party*

The parties contest whether Williams is a "prevailing party" as to entitle her to attorney's fees under Federal Rule of Civil Procedure 68. Viking Dodge asserts that its offer of judgment was of nuisance value and is not a significant enough recovery to qualify Williams as the "prevailing party." Viking Dodge also contends that Williams cannot demonstrate that the settlement had anything to do with the underlying case. Williams argues that Viking Dodge's offer of judgment changed the legal relationship between the parties, thereby qualifying Williams as the "prevailing party."

A "prevailing party" is "[a] party in whose favor a judgment is rendered, regardless of the amount of damages awarded . . ." *Buckhannon Bd. & Care Home, Inc. v. West Virginia Dept. of Health & Human Resources*, 532 U.S. 598, 603 (2001) (*Buckhannon*), *quoting* Black's Law Dictionary 1145 (7th ed.1999); *see also T.D v. LaGrange School Dist. No. 102*, 349 F.3d 469, 474-475 (7th Cir.2003) (*T.D.*) (*Buckhannon* definition of "prevailing party" extends consistently to federal fee-shifting provisions). A settlement agreement enforced through a consent decree, even where no

---

[1] In its response brief, Viking Dodge argues that Feofanov should be compensated for 2.7 hours and, later in its brief, 2.3 hours. In reaching both of these figures, Viking Dodge deducted the 7.5 hours of allegedly excessive time billed from the 9.7 hours actually billed by Feofanov. The correct figure of this calculation is 2.2 hours; hence, the Court uses this figure.

admission of liability is made, is still a "court-ordered 'chang[e] [in] the legal relationship between [the plaintiff] and the defendant.'" *Buckhannon*, 532 U.S. at 604, *quoting Texas State Teachers Assn. v. Garland Ind. School Dist.*, 489 U.S. 782, 792 (1989). "Where a settlement agreement is embodied in a court order such that the obligation to comply with its terms is court-ordered, the court's approval and the attendant judicial oversight (in the form of continuing jurisdiction to enforce the agreement) may be . . . functionally a consent decree." *T.D.*, 349 F.3d at 478, *quoting Smyth v. Rivero*, 282 F.3d 268, 281 (4th Cir.2002). In other words, parties are said to have prevailed "for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing the suit." *King v. Ill. State Bd. of Elections*, 410 F.3d 404, 414 (7th Cir.2005), *quoting Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) (*Hensley*).

Rule 68 offers of judgment are enforceable by the court. *See* Fed.R.Civ. P. 68; *Aynes v. Space Guard Products, Inc.*, 201 F.R.D. 445, 450-51 (S.D. Ind. 2001), *citing Buckhannon*, 532 U.S. at 603-04 n.7. Accordingly, such settlement agreements deem the plaintiff the "prevailing party" and permit them to seek attorney's fees. *See Buckhannon*, 532 U.S. at 604; *see also Dechert v. Cadle Company*, ___ F.3d ___, ___, 2006 WL 647715 at *1 (7th Cir.2006) (where a settlement gives similar relief as an injunction or damages, plaintiff is the prevailing party). "A Rule 68 offer of judgment is a proposal of settlement that, by definition, stipulates that the plaintiff shall be treated as the prevailing party." *Delta Air Lines v. August,* 450 U.S. 346, 363 (1981).

Williams and Viking Dodge reached a private settlement, which was entered via a court judgment. Although the judgment was for a relatively small amount of money, the settlement still provides that the plaintiff is the "prevailing party." For example, while not admitting liability, the offer of judgment resulted in a final judgment "in favor of the plaintiff and against defendant. . . ."

3

Consequently, this Court entered a final order, dismissing and closing the case. Also, Viking Dodge's argument that Williams cannot prove a connection between the settlement and the underlying lawsuit is meritless – Viking Dodge's offer of judgment states that the offer is for "final judgment . . . in this action on Counts I, II, III, IV, V, and VI of the plaintiff's complaint. . . ." Viking Dodge's offer of judgment conferred Williams with "prevailing party" status. *See Buckhannon*, 532 U.S. at 604; *T.D.*, 349 F.3d at 478.

*Reasonableness of Petition Request*

The party seeking attorney's fees bears the burden of proving the reasonableness of the hours worked and the claimed hourly rates. *Hensley*, 461 U.S. at 433. The starting point for determining the amount of reasonable fees is the number of hours reasonably expended on the case multiplied by a reasonable hourly rate. *Hensley*, 461 U.S. at 433. This product is commonly referred to as the "lodestar." *Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544, 550 (7th Cir.1999) (*Spegon*).

Both parties agree that Hutul is entitled to 4.1 hours of work. However, they disagree as to the number of hours Feofanov worked on this case. Viking Dodge contends that Feofanov's billed hours are excessive and that he should only be paid for 2.2 hours of service. Specifically, Viking Dodge argues that the one hour spent by Feofanov conferring with Williams about the case is duplicative and excessive to Hutul's 2.5 hours previously spent doing exactly the same thing. Viking Dodge also claims that Feofanov's two hours of research on potential causes of action are excessive, considering his expertise in consumer protection law and prior cases involving virtually identical claims.

The 3.3 hours of Feofanov's disputed billed time consists of the following: a one-hour phone conversation with the client on September 13, 2005, regarding circumstances of the transaction and potential options; 1.3 hours spent in research and/or drafting the complaint; 0.2 hour spent reviewing

4

waiver of service forms prepared by the paralegal on September 9, 2005; and 0.8 hour conferencing with the client and Hutul on October 30, 2005.

Feofanov's billing records do not indicate that the contested time was excessive or unnecessary. The court should exclude from the initial fee calculation hours that were not reasonably expended, including those that are excessive, redundant, or otherwise unnecessary. *Hensley*, 461 U.S. at 434. The fact that Feofanov spent one hour discussing the facts of the case with the client after Hutul had already done so does not warrant this time redundant or unnecessary. It is reasonable for co-counsel to each meet with the client if they cannot do so together. While Hutul could have reiterated the case to Feofanov, wanting to hear the facts of the case directly from the client does not invalidate the time spent. Similarly, twelve minutes (0.2 hours) spent reviewing forms prepared by a paralegal is not excessive. Finally, although Feofanov's 0.8 hour conference with Hutul does not match the date of Hutul's billing record, both attorneys record a 0.8 hour conference, which appears only once on each attorney's records. Feofanov or Hutul presumably mis-dated the conference. This alone does not invalidate the billing. Feofanov is, therefore, entitled to 5.5 hours of billable time.

Viking Dodge also objects to Feofanov's paralegal fee of one hour for preparing waiver of service forms, since these forms merely entail cutting and pasting party names into a preprinted form. Feofanov asserts that the paralegal charge of one hour is reasonable because the paralegal must print, format, and serve the waiver forms. Feofanov is not entitled to paralegal fees at a rate of over $100 per hour for tasks that can (and should) be performed by a clerk or messenger at a fraction of that rate. Accordingly, Feofanov's paralegal is entitled to 0.5 hour of billable time.

Finally, Viking Dodge disputes an undocumented Westlaw search charge of $40 on September 3, 2005. Feofanov does not assert any argument in response to Viking Dodge's claim that the Westlaw charge is unsubstantiated by Feofanov's billing records. Without evidence, Feofanov will not be awarded this cost.

Viking Dodge objects to the hourly rates of Hutul, Feofanov, and Feofanov's paralegal. Williams requests a $425 hourly rate for Hutul, $325 per hour for Feofanov, and $105 per hour for Feofanov's paralegal.

After determining the reasonably expended hours, a court must determine a reasonable hourly rate. *Hensley*, 461 U.S. at 433. The reasonable hourly rate is based on the "market rate" for the services rendered. *See People Who Care v. Rockford Bd. of Educ.*, 90 F.3d 1307, 1310 (7th Cir.1996) (*People Who Care*). An attorney's market rate is the rate that lawyers of similar experience and ability in the community normally charge their paying clients for the same type of work. *Spegon*, 175 F.3d at 555. Counsel's actual billing rate for comparable work is presumptively appropriate for use as the market rate. *People Who Care*, 90 F.3d at 1310; *Harris v. River View Ford, Inc.*, 2001 WL 34671158 (N.D. Ill. Dec. 19, 2001) (*Harris*). The next best evidence of counsel's market rate is evidence of rates that similarly experienced attorneys in the community charge paying clients for similar work and evidence of fee awards that attorneys have received in similar cases. *Spegon*, 175 F.3d at 555. Counsel seeking fees has the burden of proving the market rate. *Spegon*, 175 F.3d at 554. Once counsel establishes his or her rate, the burden shifts to the opposing party to demonstrate why the rate should be lower. *Spegon*, 175 F.3d at 554-55, *citing People Who Care*, 90 F.3d at 1313.

In support of Hutul's hourly rate, Hutul submitted a Declaration in Support of the Petition for Fees in which he cites the rates charged by top Chicago law firms of an average hourly rate, ranging from $407 for high level partners to $225 for upper-level associates. Hutul also submitted an affidavit of Peter S. Lubin, which states that Lubin is a defense attorney involved in several consumer fraud cases, similar to this one. That, in 1999, defense firms were charging up to $665 per hour for attorneys with over twenty years of experience, like Hutul, yet, Hutul was charging $175 per hour in 2000 while doing defense work. But, in 2005, Hutul himself averred in 2005 that consumer fraud attorneys on the plaintiff side at his firm charge between $150 and $300 per hour. *See* Declaration of William Hutul, *Arch v. Glendale Nissan,* 2005 WL 1421140 (N.D. Ill. June 7, 2005) (*Arch*). Based on Lubin's familiarity with the market rate and Hutul's experience, Lubin recommends an hourly rate of $525 and supports Hutul's requested $425 as reasonable.

Viking Dodge provides contrary affidavits from area attorneys, stating that Williams' requested hourly rate for Hutul is unreasonable. However, Charles G. Roth's affidavit quotes market rates for the Central District of Illinois, not the Northern District of Illinois. Viking Dodge's second affidavit, submitted by Stuart D. Gordon, Viking Dodge's attorney in this case, recommends an hourly rate of $225 for Hutul. Viking Dodge claims that the market rate for a similarly situated attorney as Hutul is $225 per hour, $160 per hour for Feofanov, and $80 per hour for Feofanov's paralegal.

Notably, Hutul's requested fee of $425 exceeds the large Chicago firm partner's average hourly rate. While Hutul is an experienced attorney, an hourly rate of $425 is excessive. In light of his experience and prior rates listed in a year-old affidavit, an hourly rate of $325 for Hutul's work in this case is reasonable.

7

Williams requests an hourly rate of $325 for Feofanov. Feofanov filed a Declaration in Support of Williams' Petition. Feofanov's Declaration, for the most part, mirrors that of Hutul. This Court has previously determined Feofanov's appropriate rate and incorporates that determination. *See Harris*, 2001 WL 34671158 at *4 ("[A] reasonable hourly rate of $225 is appropriate for Feofanov."). The Consumer Price Index warrants an adjustment of that rate since 2001.[2] Accordingly, $250 is a reasonable hourly rate for Feofanov's services.

Viking Dodge fails to explain why Feofanov's paralegal's hourly rate is excessive. The hourly rate of $105 for Feofanov's paralegal is reasonable.

After properly determining the lodestar, the court may then decrease or increase the lodestar amount by considering a variety of factors, such as: "(1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill required to perform the legal services properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases." *Covington-McIntosh*, 2004 WL 2700482 at *3, *citing Hensley*, 461 U.S. at 429-30. The most important of these factors is the "degree of success obtained." *See Hensley*, 461 U.S. at 434-436; *Spegon*, 175 F.3d at 557; *see also Harris*, 2001 WL 34671158 at *1. However, the purpose behind awarding attorney's fees in suits

---

[2] The Department of Labor reports a Consumer Price Index percentage of: 1.6 percent in 2001; 2.4 percent in 2002; 1.9 percent in 2003; 3.3 percent in 2004; and 3.4 percent in 2005. *See* Bureau of Labor Statistics, U.S. Dept. of Labor, fttp://ftp.bls.gov/pub/special.requests/cpi/cpiai.txt. This calculation shows that a rate of $225 in 2001 is equivalent to a rate just above $250 today.

alleging violations of consumer protection statutes is to insure that suits are still brought, although the amount of the damages and/or award may be limited. *E.g. Harris*, 2001 WL 34671158 at *5 (plaintiff settled for $1,000, yet court awarded $14,552.50 in attorney's fees), *citing In re Pine*, 705 F.2d 936, 938 (7th Cir.1983) ("Congress must have known that you cannot prosecute a claim for $1,000 . . . without incurring more than $1,000 in legal fees . . ."); *Hannon v. Speciality Nat'l Bank*, 537 F.2d 327, 328 (9th Cir.1976) (purpose of granting attorney's fees is to facilitate private enforcement of the TILA); *see also,* Senate Report – No. 93-151, 93rd Congress, First Session, pp. 23-24 ("It should be noted that an attorney's fee is to be based upon actual time expended . . . This requirement is designed to make the pursuit of consumer rights . . . economically feasible.").

In light of the consumer rights protection policy, and in the absence of compelling arguments from the parties to adjust the lodestar, the Court declines to alter the fee awards determined herein. Therefore, the fee awards are as follows:

Hutul: 4.1 hours at $325 per hour + $250 filing fee = $1,582.50

Feofanov: 5.5 hours at $250 per hour + .5 hour paralegal at $105 per hour = $1,427.00

## CONCLUSION

For the foregoing reasons, Williams' Petition for Attorney's Fees is granted in the amount of $1,582.50 to Hutul and $1,427.00 to Feofanov.

Dated: April 26, 2006

JOHN W. DARRAH
United States District Court Judge